13-2195-cv
Jones v. Perez

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of December, two thousand thirteen.

PRESENT: REENA RAGGI,
DENNY CHIN,
CHRISTOPHER F. DRONEY,
*Circuit Judges*.

-----------------------------------------------------------------------

BRETT S. JONES, individually and on behalf of all others similarly situated,

*Plaintiff-Appellant*,

TIMOTHY A. HUTCHINSON, individually and on behalf of all others similarly situated,

*Plaintiff,*

v.                                                                                No. 13-2195-cv

ANTONIO M. PEREZ, PHILIP J. FARACI, ANTOINETTE P. MCCORVEY, and PRADEEP JOTWANI,

*Defendants-Appellees*.

-----------------------------------------------------------------------

1

APPEARING FOR APPELLANT:            ANDREW   S.   LOVE   (Susan   K.
                                    Alexander, Aelish M. Baig, Sunny S.
                                    Sarkis, Robbins Geller Rudman & Dowd
                                    LLP, San Francisco, California; Michael
                                    I. Fistel, Jr., Marshall P. Dees, Holzer
                                    Holzer & Fistel, LLC, Atlanta, Georgia,
                                    *on the brief*), Robbins Geller Rudman &
                                    Dowd LLP, San Francisco, California.

APPEARING FOR APPELLEES:             MARK A. PERRY (Jonathan C. dickey,
                                    Jennifer L. Conn, Gabrielle Levin,
                                    Gibson, Dunn & Crutcher LLP, New
                                    York, New York, *on the brief*), Gibson
                                    Dunn & Crutcher LLP, Washington, D.C.

Appeal from a judgment of the United States District Court for the Southern District of New York (Harold Baer, Jr., *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on May 1, 2013, is AFFIRMED.

Plaintiff Brett S. Jones, on behalf of himself and a putative class of investors who acquired Eastman Kodak Company ("Kodak") securities between July 26, 2011, and January 19, 2012, appeals from the dismissal of his second amended complaint for failure to state securities fraud claims against defendants Antonio M. Perez, Kodak's Chief Executive Officer, and Antoinette McCorvey, Kodak's former Chief Financial Officer, in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, see 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, see 17 C.F.R. § 240.10b-5.  We review a Rule 12(b)(6) dismissal de novo, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's

favor. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In doing so, we may consider written instruments attached to the complaint, statements or documents incorporated therein by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which he relied in bringing suit. See id. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.      Section 10(b) and Rule 10b-5 Claims Generally

To survive dismissal, securities fraud complaints must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b), which requires that the circumstances constituting fraud be "state[d] with particularity," and the Private Securities Litigation Reform Act ("PSLRA"), see 15 U.S.C. § 78u-4(b), which requires that scienter, i.e. a defendant's "intention to deceive, manipulate, or defraud," also be pleaded with particularity. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (2007) (internal quotation marks omitted). To satisfy the PSLRA, a complaint must, "'with respect to each act or omission alleged to [constitute securities fraud], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d at 99 (quoting 15 U.S.C. § 78u–4(b)(2)). That strong inference must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 324. The determination is made by

3

considering "all of the facts alleged, taken collectively," not by scrutinizing individual allegations in isolation. Id. at 323.

Applying these principles here, we conclude, as the district court did, that the second amended complaint and documents incorporated therein do not permit an inference of the requisite scienter. Jones acknowledges that "the public was generally aware that Kodak was experiencing difficulties making the transition from film to digital," and that "investors were aware that Kodak was encountering liquidity challenges" in the process. Appellant's Reply Br. 3, 16. Jones does not challenge the accuracy of any of Kodak's financial disclosures, and his allegations of recklessness are undermined by the abundance of disclosures and warnings issued by Kodak both before and throughout the class period regarding Kodak's deteriorating financial condition and liquidity problems. See Rombach v. Chang, 355 F.3d 164, 176–77 (2d Cir. 2004). While defendants arguably took a more optimistic view of Kodak's prospects than many analysts viewing the same publicly available information, "misguided optimism is not a cause of action, and does not support an inference of fraud." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994); accord Stevelman v. Alias Research Inc., 174 F.3d 79, 85 (2d Cir. 1999). Thus, like the district court, we conclude that the more compelling inference from the facts alleged in the second amended complaint is that "[d]efendants properly disclosed relevant information to the public while Kodak was struggling to avoid bankruptcy and that [d]efendants' best efforts did not materialize." Hutchinson v. Perez, No. 12 Civ. 1073(HB), 2013 WL 1775374, at *4 (S.D.N.Y. Apr. 25, 2013).

As to specific statements cited by Jones to claim securities fraud, he has failed to "allege facts and circumstances that would support an inference that defendants knew of specific facts that are contrary to their public statements."  Rombach v. Chang, 355 F.3d at 176.

2.      July 26, 2011 Investor Conference Call

Jones claims that during a July 26, 2011 investor conference call, defendants misled investors about Kodak's true financial condition by responding to analyst questions about liquidity with statements that they were "comfortable" with Kodak's current and projected cash position, despite knowing "critical facts" concealed from the public: that 70% of Kodak's cash was tied up overseas, that Kodak was experiencing difficulty selling its patents, and that Kodak's consumer inkjet business was missing internal targets.

As to the overseas cash holdings, Jones fails to allege why disclosure was necessary absent a basis to think that Kodak would need these funds to meet its year-end projections. Kodak's eventual disclosure of its overseas cash holdings warrants no different conclusion given our rejection of "fraud by hindsight."  Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir. 2000).  Further, the assertion that defendants lacked a reasonable basis for expressing "comfort" with Kodak's current cash position, because they should have known that Kodak was experiencing a liquidity crisis, is conclusory and speculative and, thus, cannot raise an inference of fraud.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d at 99

5

("Allegations that are conclusory or unsupported by factual assertions are insufficient.").[1] Insofar as defendants' comfort with Kodak's cash position was based on a more optimistic view of otherwise publicly available financial information, that alone cannot be deemed "an extreme departure from the standards of ordinary care" capable of establishing scienter through recklessness. Novak v. Kasaks, 216 F.3d at 308 (internal quotation marks omitted).

3.      September 30, 2011 Press Release

Jones submits that Kodak's September 30, 2011 press release stating "no intention to file for bankruptcy" can plausibly be viewed as an attempt to mislead investors to think "that bankruptcy was not a possibility at all." Appellant's Br. 22. The text of the press release belies this construction because it identifies "bankruptcy" expectations in the release as a "forward-looking statement[] as defined in the [PSLRA]," and cautions that "[a]ctual results may differ from those expressed or implied in forward-looking statements" depending on factors adversely affecting Kodak's financial performance and liquidity, including its ability to raise cash and maintain a cash balance sufficient to fund continued investments, capital needs, restructuring payments, and to service debt. J.A. 666–67.

Jones's urged construction is further undermined by news reports referenced in the second amended complaint, which indicate that Perez and the media understood the press

---

[1] Because we conclude that the July 26, 2011 statements do not raise an inference of scienter, we need not decide whether expressions of "comfort" in this context were "forward-looking" or "puffery."

6

release to refer to Kodak's present intentions.  See, e.g., Mike Spector & Dana Mattioli, Kodak Seeks Help as Fears Mount, Wall St. J., Oct. 1, 2011, J.A. 690–91 (stating that Perez told Kodak employees "the company had no intention of filing for bankruptcy at that time" (emphasis added)).

In sum, when the press release is viewed in context, it cannot plausibly be alleged that a reasonable investor would understand defendants to have represented that there was no possibility of Kodak filing for bankruptcy.  Rather, the release indicated only that Kodak had no present intention of doing so.  Cf. Kleinman v. Elan Corp., plc, 706 F.3d 145, 153 (2d Cir. 2013) (holding that even if plaintiff's definition of "top-line results" was correct, "given the context of the statements, no reasonable investor could have understood the headline to mean anything other than the positive subgroup results").

That Kodak's stock price temporarily increased by 47% following the press release does not compel a different conclusion, where, as here, another plausible reason explains a movement in stock price—i.e., confirmation that a bankruptcy filing was not imminent—because "market reaction is [not] a gauge for falsity."  Id. at 155.  Moreover, because the press release cannot plausibly be read to deny the possibility of a bankruptcy, Jones's second interpretation—that defendants' denial of an intention "to file" for bankruptcy was a denial of any intention to "prepare" for a possible bankruptcy—is equally implausible.

The same conclusion obtains with respect to Jones's contention that defendants, having chosen to speak on the issue of bankruptcy, were under a continuing duty to

7

disclose the likelihood of bankruptcy. Because the September press release did not suggest that Kodak would not file for bankruptcy in the future, it "lack[ed] the sort of definite positive projections that might require later correction." In re Time Warner Inc. Secs. Litig., 9 F.3d 259, 267 (2d Cir. 1993).

Allegations in the second amended complaint, based on statements by confidential witnesses and declarations by defendant McCorvey and Lazard Freres Co., LLC ("Lazard") in the bankruptcy proceedings, also do not support an inference of scienter. At most, they confirm what was already known to the market, i.e., that Kodak's consumer inkjet business was underperforming, and that Kodak's precarious financial condition was hampering the sale of its digital patents. Jones alleges that defendants had access to reports showing that consumer inkjet sales were missing internal forecasts, but absent any pleading indicating a divergence from publicly disclosed information, this allegation fails the specificity requirements of the PSLRA and Rule 9(b). See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 196 (2d Cir. 2008) ("[W]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." (internal quotation marks omitted)). Further, confidential witnesses' assertions that, "internally," people viewed Kodak's financial state and defendants' actions as indicative of a present intent to file for bankruptcy, do not support a cogent and compelling inference of fraud because none of the confidential witnesses assert direct knowledge that this view was held by defendants. SAC ¶¶ 73, 106, 113, J.A. 127, 139, 142. Cf. New Jersey Carpenters Health Fund v.

8

Royal Bank of Scotland Grp, PLC, 709 F.3d 109, 124 (2d Cir. 2013) (holding confidential witness allegations insufficient to support probability that unnamed prior employees would have knowledge attributed to them).

While the Lazard Declaration, incorporated into the complaint, states that "on September 12, 2011," Lazard's engagement was expanded to encompass various possible strategic, financing, and restructuring alternatives, including, "if necessary, a restructuring through chapter 11," SAC ¶ 92, J.A. 134 (emphasis added), the second amended complaint alleges no fact supporting an inference that, between September 12, 2011, and September 30, 2011, defendants became aware that a bankruptcy restructuring was in fact necessary.

This omission, moreover, is fatal to Jones's contention that scienter can plausibly be inferred from defendants' motive to downplay Kodak's liquidity problems in order "to convince the public, and particularly potential buyers of Kodak's patents, that Kodak was not in desperate financial straits and not contemplating bankruptcy." Appellant's Br. 24. As Jones acknowledges, Kodak was in a "Catch-22 situation," where negative publicity about its viability was hampering its ability to complete the very transactions that would allow Kodak to avoid bankruptcy. Id. at 31. In this context, where it would defy economic reason for Kodak to make statements that would accelerate a bankruptcy filing, thereby causing more harm to investors, no reasonable inference of fraudulent intent can be drawn from the alleged motive. See Kalnit v. Eichler, 264 F.3d 131, 140–41 (2d Cir. 2001) ("Where plaintiff's view of the facts defies economic reason, it does not yield a

9

reasonable inference of fraudulent intent." (alterations and internal quotation marks omitted)).

4.    November 3, 2011 Investor Conference Call

Like the district court, we conclude that Jones has failed to allege adequately that Perez made knowing or even reckless misstatements during the November 3, 2011 investor conference call.   Jones's allegation of falsity with respect to Perez's statement—"keep in mind that our expected year end cash position does not contemplate a new financing or the sale of [its] IP portfolio"—conflates Kodak's "year-end cash position" with its ultimate viability.   Throughout the class period, Kodak and defendants made clear that the company's 2011 outlook was based on intellectual property licensing transactions, cash generating businesses, and sales of Kodak's non-core assets, and that the projected 2011 year-end cash position did not factor in the sale of digital imaging patents.   Thus, because Jones does not allege facts suggesting that Perez was aware that the year-end cash projection depended on the sale of the digital patent portfolio, there is no basis from which to infer that his statement was made with fraudulent scienter.

The same conclusion obtains with respect to Perez's statements that quarterly results reflected "continued progress toward establishing digital growth business that will form the nucleus of a new Kodak" and that he had a "high degree of confidence in [Kodak's] ability to execute" its digital growth transformation and a sale of the patents. While subjective opinions may be actionable as fraud if the speaker does not "genuinely and reasonably believe" the professed opinion or if it is totally "without a basis in fact," the

10

second amended complaint contains no allegations to support such an inference. In re IBM Corporate Secs. Litig., 163 F.3d 102, 109 (2d Cir. 1998); see also Kleinman v. Elan Corp., plc, 706 F.3d at 153; In re Time Warner Inc. Secs. Litig., 9 F.3d at 267. The same confidential witness statements and bankruptcy declarations that were insufficient to raise an inference of fraud with respect to September 30, 2011, are equally lacking as to November 3, 2011. Indeed, the Lazard Declaration states that an alternative to bankruptcy was pursued for "several months" after the September 12, 2011 expansion of its engagement, specifically, "an attempt to supplement or replace [Kodak's] $400 million prepetition asset-based revolving credit facility . . . with incremental prepetition first lien financing of up to $500 million." Lazard Decl. ¶ 11, J.A. 174. The Wall Street Journal publicly reported this effort as Kodak's attempt to obtain "rescue financing" in order to "calm investors and quell bankruptcy rumors as the company tries to sell its patents," Mike Spector & Dana Mattioli, Eastman Kodak Seeks Rescue Financing, Wall St. J., Oct. 25, 2011, J.A. 693–94; see also Dana Mattioli & Mike Spector, Kodak's Dwindling Cash Pile in Focus, Wall St. J., Oct. 31, 2011, J.A. 696–97, and the attempt, its attendant risks, and the failure of other cash generating efforts were disclosed in Kodak's November 3, 2011 SEC filings. Only after a first lien financing transaction could not be arranged did Kodak determine that "a reorganization of [its] operations under chapter 11 protection might be in the best long-term interests of [Kodak] and [its] stakeholders" and, therefore, on "December 8, 2011, [Kodak] authorized Lazard to initiate the process of securing DIP financing to fund a potential [bankruptcy] filing." Lazard Decl. ¶ 12, J.A. 174. Jones has

11

pleaded no facts to the contrary and, thus, has failed to allege plausibly that Perez lacked a reasonable basis for believing on November 3, 2011, that financing could be obtained to allow Kodak to sell its digital patent portfolio and complete its digital growth transformation without resorting to bankruptcy.

In sum, because Jones has failed to plead securities fraud with the particularity required by Rule 9(b) and the PSLRA, the district court correctly dismissed his § 10(b) and Rule 10b-5 claims, as well as his § 20(a) claims for lack of a primary violation.

We have considered Jones' remaining arguments on appeal and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

12